BROTHERHOOD OF RAILROAD TRAINMEN, BROTHER-
HOOD OF LOCOMOTIVE ENGINEERS, AND BROTHER-
HOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN,
APPELLANTS, v. CENTRAL RAILROAD COMPANY OF
NEW JERSEY, A CORPORATION, *ET AL.*, RESPON-
DENTS.

BOROUGH OF KEANSBURG, A MUNICIPAL CORPORATION
OF THE STATE OF NEW JERSEY, APPELLANT, v. CEN-
TRAL RAILROAD COMPANY OF NEW JERSEY, A BODY
CORPORATE, *ET AL.*, RESPONDENTS.

MUNICIPAL PUBLIC SERVICE COORDINATING COMMIT-
TEE, AN ASSOCIATION OF MUNICIPAL CORPORATIONS
OF THE STATE OF NEW JERSEY, ETC., APPELLANT, v.
CENTRAL RAILROAD COMPANY OF NEW JERSEY, A
BODY CORPORATE, *ET AL.*, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 12, 1966—Decided October 17, 1966.

Before Judges Goldmann, Kilkenny and Collester.

*Mr. James M. Davis, Jr.* argued the cause for appellants Brotherhood of Railroad Trainmen, Brotherhood of Locomotive Engineers, and Brotherhood of Locomotive Firemen and Enginemen (*Messrs. Powell & Davis,* attorneys).

*Mr. Patrick J. McGann, Jr.* argued the cause for appellant Borough of Keansburg (*Messrs. Reussille, Cornwell, Mausner, Carotenuto & McGann,* attorneys; *Mr. Milton A. Mausner,* on the brief).

*Mr. Stephen B. Wiley* argued the cause for respondent Central Railroad Company of New Jersey (*Messrs. Meyner & Wiley,* attorneys; *Mr. G. Douglas Hofe, Jr.* and *Mr. Dominick R. Vetri,* on the brief).

*Mr. David A. Biederman,* Deputy Attorney General, argued the cause for respondent New Jersey State Highway Department (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

PER CURIAM. These are appeals by the railroad brotherhoods, the Borough of Keansburg and the Municipal Public Service Coordinating Committee from a decision of the Deputy Highway Commissioner, granting the petition of Central Railroad Company of New Jersey (hereinafter "Central") to discontinue passenger service on that part of its line known as the Seashore Branch and to make certain schedule revisions, which would eliminate two weekday trains between Atlantic Highlands and Jersey City, a weekday train between Jersey City and Keansburg, and a weekday train between Elizabethport and Atlantic Highlands.

■ The authority for ordering the passenger service discontinuance on the Seashore Branch and the other passenger service changes was based upon *L.* 1964, *c.* 88, § 9 (*N. J. S. A.* 48:12A–16.9) which provides in part:

"The carrier shall have the right to petition the Commissioner [State Highway Commissioner] for changes in passenger service and applicable fares during the term of the contract. If such a petition

involves a decrease in the number of trains, a substantial change in schedules or an increase in fares, the Commissioner shall hold a hearing on notice."

Concededly, the carrier petitioned the Commissioner and a hearing on notice was held. But appellants argue *in limine* that the Commissioner's authority to make "changes" in passenger service does not extend to the approval of a discontinuance of all passenger service over a particular branch of the railroad. *City of Bayonne v. Palmer*, 47 *N. J.* 520 (1966), confirms that the Commissioner's discontinuance power extends to the situation herein, even though it affects all passenger service on a particular length of trackage.

*L.* 1964, *c.* 58 (*N. J. S. A.* 48:2–24), which was apparently designed to clarify the extent of the powers vested in the Highway Commissioner by the earlier legislation, expressly provided that the Commissioner, on entering into a contract for passenger service pursuant to *L.* 1960, *c.* 66, as amended and supplemented, may, without approval of the Board of Public Utility Commissioners, "authorize a *discontinuance, curtailment, abandonment or change* in passenger service, which discontinuance, curtailment, abandonment or change in service shall exist only during the term of said contract." See *Sprissler v. Pennsylvania-Reading S. S. Lines*, 45 *N. J.* 127, 131 (1965). We are satisfied that the broad reference in *L.* 1964, *c.* 88 to the Commissioner's powers to entertain petitions by carriers for "changes" in passenger service comprehends the power to authorize a discontinuance or abandonment of a railroad's branch line when the public convenience and necessity do not require continued operation thereof.

We turn, then, to the substantive merit of the decision under review.

The Seashore Branch is 10.9 miles long, extends from Matawan to Atlantic Highlands, and has station stops at Keyport, Union Beach, Monmouth, Belford and Leonardo. This branch leaves the Bay Head line at Matawan and runs roughly parallel to the Bay Head Line, the latter being at its farthest point some four or five miles distant.

In the early 1950's the Seashore Branch carried approximately 1,500 commuters. As of February 1966 that same branch, with a schedule of nine weekday trains in each direction, had only 573 passengers. Of these 23% were holders of passes, most of them railroad employees. In July 1966 there were only about 340 persons who paid fares on this branch. There is substantial evidence in the record to support the Commissioner's finding that the operation of this branch is at a considerable loss to the railroad and its discontinuance during the life of the contract with the State will result in a substantial saving, thus minimizing *pro tanto* the railroad's over-all deficit operation of its passenger service.

This reduction of about 62% in passenger patronage of the Seashore Branch has taken place during a time when the population growth in this area has increased by 100%. On the other hand, bus utilization in the past ten years in this area has increased by some 150%. One bus line alone, operating in the affected area, transports approximately 1000 passengers each weekday to New York City. There was sufficient evidence to support the Commissioner's finding that "rail and bus transportation is available which is an adequate alternative for the majority of passengers affected by the discontinuance of the service under petition."

 When passing on questions of public convenience and necessity, the major factors are (1) the cost of providing service, (2) the local need, and (3) the availability and adequacy of alternate transportation facilities. *Sprissler v. Pennsylvania S. S. Lines, supra,* 45 *N. J.,* at *p.* 136. The record supports the Commissioner's findings that, guided by those standards and the public interest, the public convenience and necessity do not require the service whose discontinuance has been approved. As stated in *Pennsylvania-Reading Seashore Lines v. Bd. of Public Utility Comm'rs,* 5 *N. J.* 114 (1950) :

"If the service sought to be withdrawn is not required by the public convenience and necessity, the railroad cannot be constitutionally required to render the same, regardless of whether the discontinuance be partial or entire." (at *p.* 129)

■ In balancing public necessity and convenience against the petitioner's pecuniary loss, the consideration must be that of the general public rather than of relatively few passengers. *Application of Central R. Co. of N. J.*, 43 *N. J. Super.* 13, 21 *(App. Div.* 1956). No business should be required indefinitely to sustain financial losses. *Id.*, at *p.* 22. We must weigh the relative need for the service against its cost. A commuter line which is lightly patronized should not be ordered to be continued at great loss merely because it offers commuter service to a relatively small number of paying patrons who have readily available alternate means of transportation.

We find no substantial merit in any of the other arguments advanced for reversal.

The decision of the Highway Commissioner is affirmed.